ADAM GORDON
United States Attorney
Shane Harrigan
Assistant U.S. Attorney
California Bar No.: 115757
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101
Tel: (619) 546-6981
Emails: shane.harrigan@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 25CR2049-W |
|---|---|
| Plaintiff, | Date: July 28, 2025<br>Time: 9:30 a.m. |
| v. | |
| SOWDA AHMED MOHAMUD,<br>    aka "Sawda Ahmed,"<br>    aka "Saynab Ahmed,"<br>    aka "Sawda Kahiye,"<br>    aka "Sowda Khiye," | The Honorable Thomas J. Whelan<br>**UNITED STATES' SENTENCING MEMORANDUM** |
| Defendant. | |

# I

# INTRODUCTION

Defendant Sowda Ahmed Mohamud ("Defendant") now faces sentencing by this Court following her guilty plea to a three-count Indictment charging her with violations of 18 U.S.C. §§ 1546(a) (false statements in immigration documents) and 1001(a)(2) (false statements to a department of the United States). The charges cover Defendant's criminal conduct in providing false statements in her Application for Asylum and Withholding from Removal and her subsequent false testimony before an immigration judge.

As background, evidence of Defendant's asylum fraud arose from a counterterrorism investigation by the San Diego Federal Bureau of Investigation Joint Terrorism Task Force

("FBI-JTTF") of Defendant, a citizen and national of Somalia, who illegally entered the United States on March 20, 2024 and was apprehended by Border Patrol. A records check of government data bases revealed that Defendant was on the terrorism watch list as suspected of being involved in terrorism or terrorism related activities. The FBI-JTTF then conducted an extensive investigation of Defendant and her relatives living in the U.S. and abroad, which included multiple interviews of Defendant, a consent search of Defendant's cell phone, search warrants executed on Defendant's multiple social media platforms, and interviews of relatives, sponsors and co-travelers in the U.S. 's investigation. This investigation revealed that Defendant made multiple false statements to both FBI-JTTF agents and immigration authorities, which included: (1) false statements regarding the names and identities of her siblings living in the U.S. and abroad; (2) false statements denying that she had ever previously applied for lawful status or asylum in the U.S. or elsewhere; (3) false statements regarding her knowledge of individuals involved in Somali terrorist organizations: and (5) contradictory statements regarding her fear of returning to Somalia. Most notably, the investigation revealed that Defendant intentionally failed to disclose the true name of one of her siblings, Mohamed Ahmed Mohamud, aka Mohamed Ahmed Qahiye ("Qahiye"). Qahiye is a high-ranking member of ISIS-Somalia, who has been identified by the U.S. Government as a senior leader in ISIS-Somalia engaged in obtaining money and weapons for that terrorist organization.

**The parties agree that Defendant faces a sentencing guideline range of 0 to 6 months and, for the reasons discussed below, the United States requests that this Court follow the joint sentencing recommendation of a time-served sentence (approximately 48 days).** The United States submits that this sentence is warranted based on a consideration of all the section 3553(a) factors. As discussed below, although the extent and nature of Defendant's false statements are aggravating, the United States submits that a time-served sentence is warranted given the fact that Defendant spent almost 15 months detained in ICE/ERO custody. Additionally, while the year-long investigation by FBI-JTTF did uncover Defendant's familial ties to a terrorist organization, it did not uncover any evidence

that Defendant traveled to the U.S. to engage in material support of terrorism or terrorist activities.

## II

## OFFENSE CONDUCT AND PROCEDURAL HISTORY

### A. Border Patrol Apprehends Defendant

On March 20, 2024, a Border Patrol Agent encountered Defendant and four other males approximately 18 miles east of the Tecate Port of Entry and 250 yards north of the United States/Mexico border. The agent questioned Defendant and the four males about their citizenship and nationality and whether they were in the possession of any legal documents allowing them to enter or remain in the U.S. Defendant and each of the four males stated that she/he was a citizen and national of Somalia, without proper immigration documents allowing her/him to remain in the United States legally. Defendant and the four males were transported to the Campo Border Patrol for further processing and disposition. At the Campo Border Patrol Station, Defendant told Border Patrol that she had a fear of returning to Somalia. During routine processing, Border Patrol determined that Defendant was a positive match to Terrorist Screening Dataset (TSDS) Known or Suspected Terrorist (KST), as an individual suspected of being involved in terrorism or terrorism-related activities. Border Patrol agents contacted FBI-JTTF for further investigation of Defendant's links to terrorism or terrorism-related activities.

### B. FBI-JTTF Interviews of Defendant

While Defendant was detained in ICE-ERO custody, FBI-JTTF agents interviewed her on three occasions (May 1, May 6 and August 19, 2024). In summary, Defendant provided the following information:

- Defendant stated she was born in Kismayo, Somalia and was raised in Bosaso, Somalia. Defendant reported having four siblings – two brothers and two sisters – none of whom resided in the U.S. Defendant stated that her parents divorced when she was very young. After her parents divorced, Defendant stated that she lived with her mother and her siblings and did not see her father much. Defendant described

her father as a difficult man who had a history of beating her (with his hands and a belt), starting at age 5. When Defendant was 5 years old, she stated that her father took her to a house to undergo female genital mutilation. Defendant stated that she only completed schooling through the seventh grade.

- Defendant stated that in 2016, her father forced her into a marriage with a 46-year-old Somali businessman. However, with the assistance of her mother, Defendant was able to get a divorce just a month and a half later. After the divorce, Defendant stated that she spent time hanging around outside Bosaso. While still in Somalia, Defendant claimed that she was scared and lived in fear that her father would force her to marry again. As a result, in 2020, Defendant's mother and sister arranged for her to go to Nairobi, Kenya to live with her relatives.

- In 2022, Defendant left Kenya and returned to Somalia because she missed her mother and family. However, she stated that after she returned to Somalia, her father contacted her mother and informed her that he had found a wealthy man from his tribe for Defendant to marry. When Defendant refused, she stated that her father became upset because he had already taken money from the man in exchange for promise of the marriage. Defendant claimed her father beat her with his fists and tried to strangle her – which beating was the cause of a scar under her left eye.

- Defendant stated that after her father beat her in 2022, she went back to Kenya with her mother and younger sister. Defendant stated that after returning to Kenya, she decided that she wanted to come to the U.S. because there was pressure for Somali nationals to leave Kenya, and she feared going back to Somalia due to fear of her father. Defendant claimed that she had not communicated with her father since July 2022.

- Defendant first told agents that she travelled to the United States by herself. However, Defendant later admitted that a male friend, "A.B.", traveled to the United States with her. A.B. was one of the four Somali males who along with Defendant was apprehended by Border Patrol. Defendant stated that she initially met A.B. via

- Facebook in 2018, and they eventually became boyfriend and girlfriend in 2020. Defendant stated that in January 2024, A.B. and she both purchased a plane ticket to travel from Kenya to Brazil, via Turkey, arriving on or about February 1, 2024. After arriving in Brazil, she and A.B. spent the next two months traveling by foot, boat, bus and plane through South and Central America -- eventually arriving in a remote area near the U.S./Mexico border, where they crossed into the U.S. over the border fence.

- Defendant claimed that she did not have any family in the U.S. She planned to ultimately travel to Chicago and stay with her U.S. sponsor/point of contact, who she claimed was a family member of one of her mother's friends, and she did not personally know him. She stated that her sponsor had introduced her to a female In Chicago, "M.A.M." Defendant stated she spoke to M.A.M. frequently but did not know her last name. As discussed further below, the investigation revealed that M.A.M. was actually Defendant's biological sister.

- Defendant denied that she ever provided money or assistance to a terrorist or extremist group. In fact, when Defendant was initially asked if she knew of any terrorist organizations, she stated the did not. Defendant later stated that while she had heard of al-Shabaab, she did not know any members of al-Shabaab.[1] She stated that she had only heard that members of al-Shabaab were bad people who kill other people for no reason. She also denied having family, friends or associates that were part of any terrorist groups or had any knowledge of their recruitment strategies or family/business affiliations.

- Agents also showed Defendant two photographs, depicting Abdul Qadir Mumin, aka Sheikh Abdulkadir, a Somali Islamist and the leader of the terrorist organization

---

[1] Al-Shabaab (aka "the Youth") is a violent and brutal militant Islamic terrorist organization. Since its inception, it has used violence and intimidation to undermine Somalia's governments. It also established ties with al-Qaeda in the Arabian Peninsula. On February 26, 2008, the U.S. Department of State designated al-Shabaab as a Foreign Terrorist Organization (FTO). Al-Shabaab controls large parts of central and southern Somalia.

Islamic State in Somalia ("ISIS-Somalia"), and a former religious leader of al-Shabaab. In or about 2022, Mumin reportedly took over as the global leader of ISIS. Defendant stated she did not recognize the photographs of the individual.[2]

### C.  Defendant's Asylum Application and Immigration Proceedings

On or about December 14, 2024, Defendant filed her I-589 Application for Asylum and Withholding of Removal, signed under penalty of perjury. In Defendant's I-589 Application, Defendant alleged that she faced gender-based persecution if she returned to Somalia, stating that she was threatened, beaten, and forcibly circumcised by her father, and that her father is targeting her to go through forced marriages, and feared her father would kill her if she returned. In her filings, she added that she had not spoken to her father since she left Somalia in 2022. Following the filing of her Application, Defendant appeared before an immigration judge on December 17, 2024, January 21, 2025, and February 11, 2025, at court hearings for a determination of her claims for relief in her Application.

As part of the I-589 Application, an applicant is required to list information about their parents and siblings, including full name, city/country of birth, and current location. Defendant listed only four siblings – two sisters and two brothers. During her subsequent sworn testimony before an immigration judge on December 17, 2024, Defendant reaffirmed this statement – claiming that she had accurately listed all of her siblings in her I-589 Application and did not have any other known biological siblings. However, as discussed below, the FBI-JTTF investigation revealed that Defendant fraudulently and intentionally omitted listing her biological sister, M.A.M., who was residing in the U.S. pending a resolution of her own immigration application.

As further part of her I-589 Application, Defendant also stated that she had never "applied for or received any lawful status in any country other than the one from which you are now claiming asylum." During her subsequent sworn testimony before an immigration

---

[2] The U.S. Department of State designated both ISIS-Somalia on February 27, 2018, as well as Mumin, on August 11, 2016, as Specially Designated Global Terrorists pursuant to Executive Order 13224. Mumin's designation includes his many monikers, some of which contain the honorific "Sheikh," e.g., Sheikh Abdulqadir and Sheikh Abdikadir.

judge on January 21, 2025, Defendant reaffirmed this statement. As discussed below, Defendant knowingly and intentionally provided false and fraudulent statements in her Application and testimony in that she denied that she had previously applied for lawful status in U.S., U.K. and Brazil.

As part of its opposition to Defendant's application for asylum and withholding, ICE counsel submitted multiple exhibits relating to the FBI-JTTF's counter-terrorism investigation. As a result, on the third day of hearings, February 11, 2024, the Immigration Judge advised Defendant that "*given the filings with the Department most recently there are some serous concerns for the court not only as to your credibility but as to potential bars related to a previous asylum filing*," which the court stated could bar Defendant from any future relief from removal. Following this comment, Defendant withdrew her Application and requested a voluntary departure. The Court denied Defendant's request for voluntary departure and ordered her removed, stating that there was "*ample evidence that* [Defendant] *had provided false statements to this Court*, including whether she has applied for asylum or protection in any other country. The Court further informed Defendant that because it appeared that she had provided false information to the Court, her Application would be dismissed with prejudice.

### D. Evidence of Defendant's False Statements and Testimony

#### 1. Evidence re Fraudulent/False Statements re Siblings

The FBI-JTTF investigation revealed that in her statements to the FBI and immigration officials, Defendant had intentionally concealed facts about the identity, names and locations of some of her family members including that she had another biological sister, M.A.M., who was in the U.S. pending a resolution of her own asylum application.

Agents first learned of the familial relationship between M.A.M. and the Defendant from a review of recorded phone calls between the two, which calls were made while Defendant was in ICE/ERO custody. As evidence of their familial relationship, the two discussed what information they had provided to U.S. officials about their family. Additionally, it appeared that M.A.M. was coaching Defendant as what she should tell her

attorney, immigration officials, and the FBI as to the reasons she left Somalia and feared persecution.

Additionally, agents were subsequently able to interview M.A.M. as well as one of Defendant's biological brothers – who was also present in the U.S. pending a resolution of his own immigration petition.  In the interview, M.A.M. identified Defendant as her biological sister.  She also provided different first names for their two biological brothers.  Based on this interview and a review of recorded telephone calls between M.A.M. and Defendant, FBI-JTTF agents also determined that Defendant had not provided the true first names of her two biological brothers.  Armed with the true names of Defendant's brothers, agents were able to locate one of the brothers who was also in the U.S.  Agents interviewed that brother who also stated that Defendant was his sister.  Additionally, he told agents that their brother, Mohamed Ahmed Mohamed, joined the Somali terrorist organization al-Shabaab in or about 2008.  He also stated that, in or around 2017 or 2018, his brother left al-Shabaab and joined ISIS-Somalia.  He stated that while a member of ISIS, his brother had transferred weapons and helped bring foreign fighters into Somalia.  The brother added that his family was part of the Ali Saleban sub-clan in Somalia.  He remarked that there were a few bad people in the clan, including his brother and Mumin, (i.e., Sheikh Abdul Qadir Mumin), the leader of ISIS-Somalia.  The brother added that he was familiar with Mumin from the news.  He also noted that his family has used the last name of Kahiye or Qahiye.[3]

In sum, based on the description of the brother and his activities, FBI assessed that Defendant's brother is Mohamed Ahmed Qahiye ("Qahiye").  Qahiye was designated by the U.S. Department of Treasury, Office of Foreign Asset Control (OFAC) on their sanctions list as a Specially Designated National and Blocked Person (SDN)/global terrorist.  In November 2022, OFAC placed Qahiye on OFAC's SDN list for having materially

---

[3]    As corroboration of this statement, Defendant used variations of the last name Qahiye in her social media, e.g., Sowda **Khiye** and Sawda **Kahiye.**

assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, ISIS-Somalia.[4]

Further investigation positively confirmed that Defendant and M.A.M. are biological sisters. During separate interviews, FBI-JTTF agents were able to surreptitiously collect DNA samples from water bottles each had used. The samples were submitted to the FBI Laboratory for DNA comparison, which tests determined that it was 280 billion times more likely that M.A.M. is the biological sister of Defendant than if M.A.M. is someone unrelated to Defendant.

### 2. Evidence of Defendant's Fraudulent/False Statements Re Prior Applications for Lawful Status in Other Countries

The FBI-JTTF investigation revealed that in her statements to the FBI and immigration officials, that contrary to her statements and sworn testimony, Defendant had previously applied for lawful status in the United Kingdom (UK) in 2021 and the United States in 2022, 2023 and 2024, and Brazil in 2024.

Evidence of Defendant's prior applications were uncovered in searches of her email account and her cell phone. Specifically, Agents found emails which showed that on or about March 21, 2021, Defendant applied to the U.K. for a European family permit (Family Visa). In that application, Defendant claimed that she had a husband, who was a European national, born in Denmark who worked in the U.K. Additionally, agents uncovered another email that showed that on October 20, 2020, Defendant had applied for the 2022 U.S. Diversity Visa Program. The Diversity Immigrant Visa program, also known as the green card lottery, is a United States government lottery program for receiving an immigrant visa followed by a permanent resident card. Further records obtained from the U.S. Department of State showed that Defendant also applied for the U.S. Diversity Program for the years

---

[4] In the SDN designation, OFAC stated that Qahiye was the head of the Amniyat, al-Shabaab's intelligence wing. In early 2020, Qahiye and Mumin met with Iranian nationals who paid more than $10,000 to ISIS-Somalia leadership. Separately, ISIS-Somalia senior leaders Qahiye and Mumin requested an arms shipment from Yemen that included more than 20 boxes of AK-47 ammunition, a dozen boxes of pistol ammunition, several boxes of RPG (rocket-propelled grenade) launchers, and a couple of PKMs (a Russian-designed machine gun). *See* https://home.treasury.gov/news/press-releases/jy1066.

9
25CR2049-W

2023 and 2024. In those applications, Defendant provided different information as to her level of education and her marital status – all in an apparent effort to get status in the U.S. Finally, records obtained from Defendant's cell phone show that during her travel to the U.S., on February1, 2024, Defendant applied for amnesty/refugee status in Brazil.

## III
## SENTENCING GUIDELINES ANALYSIS

### A.     Parties' Guideline Calculations

Pursuant to the plea agreement, the parties jointly agreed to the following sentencing guidelines are 0 to 6 months [Adjusted Offense Level 4; CHC I]. *See* Plea Agreement (ECF 19); United States' Sentencing Summary Chart (ECF 20).

## IV
## SECTION 3553(a) SENTENCING ANALYSIS

### A.     The Section 3553(a) Sentencing Factors Support a Sentence of 240 Months

As part of the sentencing process, the court is to consider the factors set forth in 18 U.S.C. § 3553(a), and impose a sentence that is sufficient, but not more than necessary, to achieve the goals of sentencing. Here, a balanced consideration of the section 3553(a) factors supports the time-served sentence jointly requested by the parties.

#### 1.     The Nature and Circumstances of the Offense

Defendant's false statements in his asylum application and sworn testimony are serious in that they undermine the integrity of the asylum process and the immigration judicial system. Here, Defendant's conduct by providing false information about her family members also impeded the FBI-JTTF's investigation into whether Defendant presented a threat to national security. However, while it was determined that Defendant hid the identity of her brother who is a high-ranking member of a terrorist organization, in mitigation, the FBI-JTTF's investigation did not reveal evidence that Defendant traveled to the U.S. to engage in terrorism activity or support terrorism.

### 2. The History and Characteristics of the Defendant

Defendant Abdullahi is a single 27-year-old Somali national, who resided in Somalia until age 22 (2020). For various time periods from 2022 through 2024, Defendant resided in Kenya and Somalia. Defendant has no prior criminal record in the U.S. and no known prior record in Somalia or Kenya. While Defendant's brother is a member of a terrorist organization and Defendant was watch listed as being suspected of being involved in terrorism or supporting terrorism activities, the United States did not uncover any evidence that Defendant travelled to the U.S. to engage in, or support, terrorism. By withdrawing her application for asylum in the immigration proceedings and pleading guilty to all the charges in the Indictment, Defendant has demonstrated acceptance for her fraudulent and criminal actions. On balance, these mitigating factors do weigh in favor of this Court imposing a time-served sentence of 48-days.

### 3. Reflect Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment

As with all cases, the punishment should be just and tailored to the particular matter. Here, Defendant's offense conduct including relevant conduct involved numerous false statements tailored to gaining legal status in the U.S. It should be noted, however, that prior to being indicted and arrested for the criminal offenses, Defendant did spend almost 15 months in ICE/ERO custody pending a determination of her claim for asylum and withholding from removal. Because that detention was due, in part, to the fact that she was on the terrorism watchlist and being investigated by the FBI-JTTF, the United States submits that the Court can consider that custody time in determining an appropriate sentence. In sum, if this Court imposes a time-served sentence of 48 days, it will mean that Defendant will have served a total time in detention in U.S. custody of approximately 17 months – well beyond the upper end of the guideline ranged faced by Defendant. When Defendant's custody time is viewed in this context, a time-served sentence adequately reflects the gravity of Defendant's criminal conduct.

### 4. Afford Adequate Deterrence

The time-served sentence recommended by the parties adequately addresses both the need to deter Defendant from future criminal activity (i.e., specific deterrence) and the need to deter others from engaging in such activity(i.e., general deterrence).

<u>Specific Deterrence</u> – As noted above, Defendant has accepted responsibility for her entire criminal conduct by pleading guilty to all counts of the Indictment within weeks after being charged. Additionally, the immigration court has dismissed all of Defendant's claims for relief under the Immigration Act with prejudice and ordered her removed from the U.S. Defendant's acceptance of responsibility and the fact that she will be deported from the U.S. make it unlikely that she will reoffend. As such, this factor weighs in favor of a time-served sentence.

<u>General Deterrence</u> – Given the fact that a time-served sentence will mean that Defendant has spent over 17 months in administrative and federal custody, the United States submits that this sends an appropriate message to other individuals seeking to fraudulently gain status in the United States. As such, this factor also weighs in favor of a time-served sentence.

## VI

## CONCLUSION

For the above stated reasons, the United States respectfully requests that this Court impose a sentence of time served as to all Counts, to run concurrently, with no supervised release to follow and no fine.

DATED: July 21, 2025.

Respectfully submitted,
ADAM GORDON
United States Attorney

*/s/Shane Harrigan*
SHANE HARRIGAN

12

25CR2049-W